IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 5, 2012

**DAMIEN CLARK v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 05-04275    J. Robert Carter, Judge**

_____

**No. W2011-02168-CCA-R3-PC  - Filed March 28, 2013**

_____

Following a jury trial, Petitioner, Damien Clark, was convicted of second degree murder. This court affirmed the judgment of conviction in *State v. Damien Clark*, W2007-00651-CCA-R3-CD, 2009 WL 890886 (Tenn. Crim. App. April 1, 2009), *perm. app. denied* (Tenn. Aug. 17, 2009). Petitioner filed a timely petition for post-conviction relief. Following an evidentiary hearing, the petition was dismissed. Petitioner appeals, asserting that he is entitled to post-conviction relief because his trial counsel rendered ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JEFFREY S. BIVINS, JJ., joined.

Constance Wooden Alexander, Memphis, Tennessee, for the appellant, Damien Clark.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Amy P. Weirich, District Attorney General; Betsy Weintraub, Assistant District Attorney General; and Marlinee Iverson, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

At trial, the defense strategy for acquittal of the charges was self-defense. The opinion of this court in the direct appeal provides a lengthy and detailed recitation of the testimony at trial. For the purposes of the appeal in this post-conviction proceeding,

however, the summary of the facts in that opinion, taken in the light most favorable to the State, suffices to reference the facts which resulted in Petitioner's conviction for second degree murder. This court stated,

> We conclude the evidence was sufficient to convict the defendant of second degree murder, "[a] knowing killing of another." T.C.A. § 39-13-210(a)(1) (2003). The evidence showed that the defendant thought the victim had burgled his home the night before the killing. His friend, Louis Coffee, had told him the victim was one of the men fleeing the defendant's home. The defendant purchased a handgun, apparently loaded with bullets, shortly after this burglary. Armed with a loaded handgun, the defendant saw the victim the next day in front of his home. The testimony reflects that he walked from his front door to the street to confront the victim. The evidence showed that the defendant was larger than the victim, who was five feet, eight inches and weighed 151.5 pounds. The defendant called the victim to him and asked the victim where his missing items were. Despite the victim's claims of innocence, the defendant continued to assert that the victim had burgled his home. The defendant pulled his gun from his right jacket pocket and shot the victim when the two men were one to two inches apart. The evidence showed that the victim held a lit cigarette in his right hand when he was shot and that he died from this single gunshot at close range. We conclude that the Defendant was aware that firing the gun at the victim's chest when they were one to two inches apart "[was] reasonably certain to cause" the death of the victim. *See* T.C.A. § 39-11-106(a)(20) (2003) (defining "knowing"). The Defendant is not entitled to relief.

*State v. Clark*, 2009 WL 890886 at *7.

## II. Post-Conviction Hearing

Petitioner and trial counsel were the only witnesses who testified at the post-conviction hearing. Pertinent to the issue raised on appeal, Petitioner offered the following testimony. Petitioner felt that trial counsel should have obtained and presented the testimony of a forensic pathologist to rebut the testimony of the medical examiner, who performed the autopsy on the victim and testified during the State's case-in-chief. Petitioner also felt trial counsel should have presented testimony by a ballistics expert to rebut other portions of the medical examiner's testimony.

Petitioner claimed that trial counsel did not "utilize" the witnesses whose names were provided by Petitioner. Petitioner agreed that he consulted with trial counsel about asserting

self-defense. Petitioner stated that he and trial counsel "never actually talked about" Petitioner testifying at trial, but trial counsel told him during the trial he needed to testify in order to offer proof to support the defense of self-defense. Petitioner testified that trial counsel never explained that the State could use his prior convictions "against" him if he testified.

Petitioner testified that trial counsel should have secured the testimony of a medical examiner and a ballistics expert to rebut the testimony of the State's witness of her opinion of the distance of the gun from the victim when the fatal shot was fired. Specifically, Petitioner testified (apparently reading from his petition),

> As far as Dr. Karen Chancellor who testified to the range and distance which the victim in this cause was shot and killed, the medical examiner stated to her belief that because of the distance and range the victim was shot that [it] supported the state's contention of homicide constituted the element of knowing of second degree murder rather than that of being provoked to act in an irrational manner given that close range in nature of the wound. Clearly this testimony of Dr. Chancellor had gave [sic] grave impact on how the sequence of events unfolded during the course of the incident between the petitioner and the victim. And because of her testimony as to the distance and the range of the shot the victim was killed, this obviously impacted the jurors.

Regarding the State's filed notice of impeaching convictions, Petitioner asserted that trial counsel was "ill equipped and unprepared to deal with it." Petitioner admitted that all of the prior convictions used for impeachment were actual convictions he had received. Petitioner testified that he met with trial counsel about ten times, and Petitioner admitted he was able to tell trial counsel all that Petitioner knew about the case. Petitioner gave the names of the two persons, Lynn Vaulx (the first person on the scene just after the shooting) and Lawanda Rogers (Petitioner's girlfriend at the time of the shooting), who were not called as witnesses on his behalf as a result of trial counsel's deficient representation. Petitioner did not state exactly what either of these persons would have testified to as a witness, and neither person testified at the post-conviction hearing.

Petitioner acknowledged that he and trial counsel discussed Petitioner's testifying at trial, and that it was ultimately Petitioner's decision whether to testify. However, Petitioner stated, "We never went over that my prior convictions were going to be brought up." Petitioner testified that he would not have testified at the trial if he had known that his prior convictions could be brought out during his testimony. Without any specific factual elaboration, Petitioner indicated that trial counsel failed to paint a picture to the jury of what really happened leading up to the shooting. Petitioner testified that his trial counsel "opened

the door" for the State to present his bad character evidence by asking Petitioner on direct examination if he had been convicted of robbery in 1995. Petitioner agreed that the trial transcript reflected that trial counsel discussed with him, in testimony during a jury-out hearing, that the robbery conviction would be brought out for impeachment purposes if he chose to testify. However, he testified, "I didn't actually understand that word impeachment."

At the conclusion of his testimony, Petitioner admitted that all during the proceedings leading up to trial and at the trial he wanted to use the defense of self-defense as his theory of the case. He added, without further explanation, that trial counsel was deficient because he should have argued voluntary manslaughter rather than self-defense as the theory of the case.

Trial counsel testified that he had been practicing law since 1977, and practicing criminal defense law exclusively since approximately 1983. He had tried 200 or more criminal case jury trials, which included charges of murder, some of which were capital punishment cases. Among all the details of his trial preparation in Petitioner's case, trial counsel testified that he hired an investigator to assist in gathering information, reviewed the discovery material, and spoke with witnesses. Trial counsel testified that hiring a medical expert and a ballistics expert "[was not] a trial strategy that I thought needed to be pursued." Trial counsel said that from the very beginning self-defense was the theory of the defense and it was maintained throughout the pre-trial preparation and the trial. Petitioner made trial counsel aware of self-defense as a viable theory of defense.

Trial counsel admitted that the State's notice of impeaching convictions was not timely filed, but he had plenty of time to investigate and verify Petitioner's prior convictions. Trial counsel estimated that he met with Petitioner "on probably a dozen or more occasions." Trial counsel testified that he and the investigator followed up to locate and interview all witnesses whose names had been given to him by Petitioner. Trial counsel also stated that he "absolutely" discussed with Petitioner the issue of Petitioner's testifying. Specifically, trial counsel informed Petitioner of his right not to testify, and that the court would instruct the jury not to infer his guilt if he declined to testify. Further, trial counsel advised Petitioner it would be very difficult, if not impossible, to persuade the jury that it was a case of self-defense unless Petitioner testified.

Trial counsel acknowledged that while the State's notice of impeaching convictions was not timely filed, the only remedy was a continuance. Trial counsel and Petitioner did not want a continuance of the trial. Trial counsel also stated that he would have asked Petitioner about any prior convictions on direct examination, if he knew the State was allowed to ask

on cross-examination, in order to "soften the blow" by showing the jury Petitioner had nothing to hide.

On cross-examination, trial counsel specifically stated that he had no doubt about Petitioner's knowing what the word "impeachment" meant. Trial counsel also testified that he checked the records to verify whether the allegations of specific prior felony convictions were accurate.

### III. Post-Conviction Court's Ruling

The post-conviction court entered an order denying post-conviction relief. In this order, the court stated that "Petitioner and [trial] counsel were aware of and prepared for the impeachment issues when Petitioner testified." The post-conviction court also correctly concluded that Petitioner offered no proof whatsoever of what any additional witnesses would have stated if they had testified at trial. We note that the record on appeal also shows that Petitioner did not call a forensic pathologist or a ballistics expert to testify at the post-conviction hearing. The post-conviction court's findings of fact concluded with, "[i]n summary, Petitioner's attorney felt totally prepared for trial and argued the defense [self defense] that was dictated by the facts described to him by his client and by an investigation of the entire matter."

### IV. Analysis

In his brief, Petitioner alleges the following factual grounds of ineffective assitance of counsel:

(1) Trial counsel failed "to urge" Petitioner to retain the services of expert witnesses in the fields of forensic pathology and ballistics "to support the self-defense argument that [Petitioner] urged that [trial counsel] produce on his behalf at trial."

(2) Trial counsel failed to correctly explain to Petitioner all the ramifications of Petitioner testifying in his trial and specifically the ability for the State to impeach his testimony with his prior convictions.

(3) Trial counsel was deficient by "not exploring the voluntary manslaughter defense more practically than self-defense."

(4) Trial counsel failed to call witnesses, whose names Petitioner gave to trial counsel, to testify at the trial.

-5-

The Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee a criminal defendant the right to representation by counsel. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Burns*, 6 S.W.3d at 461; *Baxter*, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. This overall standard is comprised of two components: deficient performance by the petitioner's lawyer and actual prejudice to the defense caused by the deficient performance. *Id*. at 687; *Burns*, 6 S.W.3d at 461. To demonstrate prejudice, a petitioner must show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The petitioner bears the burden of establishing both of these components by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); *Burns*, 6 S.W.3d at 461. The petitioner's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim. *Burns*, 6 S.W.3d at 461; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." *Strickland*, 466 U.S. at 688; *Burns*, 6 S.W.3d at 462. The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462; *see also Strickland*, 466 U.S. at 689. The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics*, see Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made. *See Strickland*, 466 U.S. at 690; *Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. *Id*. "However, a trial court's *conclusions of law*—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely *de novo* standard, with no

presumption of correctness given to the trial court's conclusions." *Id*. (Emphasis in original).

We will first dispense with Petitioner's issues on appeal that trial counsel rendered ineffective assistance of counsel by his failure to call two specified witnesses to testify at trial, and by trial counsel's failure to utilize the services and present testimony of a forensic pathologist and a ballistics expert. Petitioner did not present testimony of the two lay witnesses at the post-conviction hearing or even provide any other proof of what the testimony of these witnesses would have been. Likewise, no expert witnesses were presented as witnesses at the post-conviction hearing. It has been noted that,

> To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). "As a general rule, this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner."

*Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008).

Petitioner is not entitled to relief on these issues.

Next, as to the assertions by Petitioner that trial counsel rendered ineffective assistance regarding the impeachment of Petitioner's testimony with prior convictions and not utilizing a "defense" of voluntary manslaughter as well as self-defense, we note that where Petitioner and trial counsel's testimony differed, the post-conviction court implicitly accredited the testimony of trial counsel. As stated above, the post-conviction court found that Petitioner was aware of, and prepared for, the impeaching evidence, and that trial counsel was prepared for trial and presented the defense that was mandated by the facts presented. Petitioner is not entitled to relief on these issues.

## CONCLUSION

The judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-7-